CP-98-15

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | Querella |
|---|---|
| Lcdo. Juan Rosa Marcano | 2000 TSPR 104 |

Número del Caso: CP-1998-0015

Fecha: 29/junio/2000

Oficina del Procurador General:

       Lcda. Cynthia Iglesias Quiñones
       Procuradora General Auxiliar

Abogado de la Parte Querellada:

       Lcdo. René Arrillaga Beléndez

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re: Lcdo. Juan Rosa Marcano

CP-98-15

PER CURIAM

San Juan, Puerto Rico a 29 de junio de 2000

I

El Procurador General de Puerto Rico presentó una querella contra el Lcdo. Juan Rosa Marcano el 25 de noviembre de 1998. La misma contenía dos (2) cargos contra el querellado en su capacidad de notario. La escritura en cuestión es la Escritura de Compraventa Núm. 102 suscrita por el querellado (en adelante Escritura 102). Los cargos aludían a los siguientes hechos:

(1) el Lcdo. Juan Rosa Marcano no se cercioró de la identidad de los comparecientes permitiendo que otra persona compareciera por la Sra. María Mercedes Soto Reyes para falsificar su firma e iniciales.

(2) el Lcdo. Juan Rosa Marcano no cumplió con el requisito de unidad de acto al comparecer testigos instrumentales.

Posteriormente, el 22 de julio de 1999, el Procurador General presentó ante este Tribunal una "Solicitud para Retirar Querella". En síntesis, expresó que no existía prueba de que hubiera propósito o interés del querellado en cometer fraude. El querellado conocía personalmente a todos los otorgantes que comparecieron a la escritura, sólo que creyó que María Soto Reyes estaba presente cuando en realidad había comparecido su hermana, aprovechando su parecido extraordinario con aquella. Aportaron al error del querellado el hecho de haber transcurrido cerca de veinte (20) años sin ver a Soto Reyes y las afirmaciones de los demás otorgantes presentándola como esposa y nuera respectivamente de los otorgantes. Por ende, el conocimiento personal de los comparecientes del cual dio fe el querellado lo hizo ajustado a la ley y jurisprudencia notarial vigente a ese momento.

Luego de examinar cuidadosamente la solicitud del Procurador General, la denegamos en esa etapa de los procedimientos, ya que se había designado un Comisionado Especial que debía seguir el procedimiento acostumbrado de vista evidenciaria.

El 16 de diciembre de 1999, el Comisionado Especial emitió su informe en el cual expresó que, a la luz de la totalidad de la evidencia, no se debía procesar al

querellado.  Estimó que no existía prueba de falta ética o incumplimiento con la Ley Notarial, con excepción de la falta de expresión de unidad de acto requerida cuando comparecen testigos instrumentales.

Finalmente, el caso quedó sometido en los méritos ante nuestra consideración el 9 de febrero de 2000. Procedemos a resolver.

II

La escritura en controversia se otorgó el 24 de octubre de 1983 por lo que es de aplicación la antigua ley notarial de 1956, Ley Núm. 99 de 27 de junio de 1956 (en adelante Ley Notarial de 1956).  Sobre la dación de fe de conocimiento, el Art. 16 de dicha ley disponía (en adelante Art. 16), en lo pertinente, que:

> Los notarios darán fe en los instrumentos públicos **de que conocen a las partes**, o de que se han asegurado de su conocimiento por el dicho de testigos.... **En casos graves y extraordinarios** en que no sea posible consignar por completo estas circunstancias, expresarán cuanto sobre ello les conste de su propia ciencia y manifiesten los testigos. (Énfasis suplido.)

En In re Cancio Sifre, 106 D.P.R. 386 (1977) y en In re Olmo Olmo, 113 D.P.R. 441 (1982), interpretamos el alcance de dicho artículo.  A pesar que estos casos también tratan de personas que fueron suplantados por personas que no eran quienes decían ser en el acto notarial, se distinguen del de autos en que el licenciado Rosa Marcano **sí conocía personalmente a todos**

**los otorgantes que comparecieron a la escritura desde hace mucho tiempo.** El querellado creyó que María Mercedes Soto Reyes estaba presente pero en realidad era su hermana, quien tenía una similitud física apreciable con Soto Reyes. El hecho que los comparecientes afirmaran y actuaran como si efectivamente la hermana era la propia Soto Reyes aportó a esta creencia errónea del querellado.

Según se desprende de los hechos antes narrados, el licenciado Rosa Marcano conocía personalmente a la que supuestamente debía comparecer, sin embargo creyó de buena fe que la que físicamente se presentó a la escritura era la que alegaba ser. El Art. 16 exigía que el notario daría fe en los instrumentos públicos **de que conocen a las partes.** Así hizo el querellado, y las circunstancias no demostraban ser graves o extraordinarias para la dación de fe de conocimiento según estas circunstancias exigen.

Hemos reiteradamente expresado que aunque no se pruebe la comisión de fraude, no es impedimento para que ejerzamos nuestra función disciplinaria. Sin embargo, nos encontramos ante una situación, que si bien se declaró nula la escritura objeto de controversia, de ésta no se desprende que el querellado haya violado alguna disposición ética o notarial en su dación de fe de conocimiento de los comparecientes.

La evidencia, según interpretada por el Comisionado y por el Procurador General, demostró que el querellado fue engañado por los comparecientes en cuanto a la identidad de la otorgante que sustituyó a Soto Reyes.[1] Por consiguiente, el conocimiento personal de los comparecientes del cual dio fe el licenciado Rosa Marcano lo hizo conforme a la ley y jurisprudencia notarial vigente al momento del otorgamiento.

Por lo antes expuesto, determinamos que la primera falta imputada no se cometió.  Veamos ahora el análisis de la segunda falta.

### III

A la Escritura 102 compareció doña Migdalia Ortiz, como testigo instrumental, a nombre de la compareciente doña Antonia Rodríguez.[2]  La Ley Notarial de 1956 exigía la unidad de acto cuando a la escritura comparecieran testigos instrumentales.  Es decir, tanto el notario como los otorgantes y los testigos debían presenciar el acto de firmas de aquellos legalmente llamados a esto. In re López de Victoria Brás, 135 D.P.R. 688, 696 (1994).[3]

---

[1]    Véase, Sucn. Santos v. Registrador, 108 D.P.R. 831, 840 (1979).

[2]    Doña Antonia Rodríguez estampó sus huellas digitales en todos los folios del documento y la testigo los inició, según consta en el párrafo 6, folio 407, de la Escritura 102.

[3]    El Art. 14 de la Ley Notarial de 1956, establecía el procedimiento en aquellos casos en que uno de los otorgantes no supiere o pudiere firmar.  En la Escritura

El Art. 15 de la Ley Notarial de 1956 disponía que "la presencia de los testigos se requiere para la lectura, consentimiento y firma, que **tendrán lugar en un solo acto**".  (Énfasis suplido.) Reyes v. Torres, 65 D.P.R. 821, 824 (1946).  La escritura requería unidad de acto al permitirse la presencia y participación de testigos instrumentales.  Sucn. Santos v. Registrador, 108 D.P.R. 831, 841 (1979).[4]

En el párrafo seis (6) de la Escritura 102 sólo se señala que "comparece como testigo instrumental, doña Migdalia Ortiz, mayor de edad, casada y vecina de Las Piedras, Puerto Rico, a nombre y a ruego de la compareciente, doña Antonia Rodríguez, quien estampa sus huellas digitales en todos y cada uno de los folios de éste documento y la testigo sus iniciales en los mismos. REPITO LA FE".  Ni del párrafo anterior, ni de algún otro párrafo en la Escritura 102, surge la solemnidad de la unidad de acto requerida en estos casos.  Por consiguiente, la segunda violación de la Ley Notarial imputada al querellado fue cometida.

---

102, el querellado no hace mención, como lo exige el Art. 14, de si la compareciente Antonia Rodríguez no podía o no sabía firmar, pero utilizó una testigo instrumental y la compareciente fijó sus huellas digitales en los folios del documento.  Al no hacer esta mención, el querellado incumplió con el Art. 14 de la Ley Notarial de 1956.

[4]  Sobre la seriedad con que el Tribunal toma el fiel cumplimiento de la unidad de acto, véase, *In re* López Toro, res. el 14 de octubre de 1998, 98 T.S.P.R. 133, 98 J.T.S. 136, pág. 171; *In re* Belén Trujillo, 128 D.P.R. 949 (1991).

IV

Por todo lo expuesto, resolvemos que el Lcdo. Rosa Marcano infringió el artículo de la Ley Notarial aludido. Tomando en consideración el hecho de que la actuación del querellado no perjudicó a persona alguna, ya que la comparecencia engañosa de los otorgantes fue la que provocó la nulidad de la escritura; y que su récord profesional como notario refleja dos apercibimientos por este Tribunal de cumplir estrictamente con la Ley Notarial de 1987 por el querellado haber dejado al descubierto su fianza notarial, estimamos prudente, limitar la sanción a una amonestación.[5] Le apercibimos que en el futuro deberá ceñirse estrictamente a las disposiciones de la Ley Notarial que estuviese vigente al momento de otorgar una escritura.

Se dictará la correspondiente sentencia.

---

[5] Del expediente personal del querellado surge que el primer apercibimiento, hecho el 18 de agosto de 1992, fue de suspensión automática de la notaría si no cumplía con el pago de la fianza notarial. El segundo apercibimiento por la misma razón, pero en distinta ocasión, tiene fecha de 2 de junio de 1998. Cada uno de estos apercibimientos los complementa otro ordenando al querellado a que en el futuro deberá cumplir estrictamente con la Ley Notarial de 1987 (1 de septiembre de 1992 y 24 de junio de 1998).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re: Lcdo. Juan Rosa Marcano


CP-98-15


SENTENCIA


San Juan, Puerto Rico a 29 de junio de 2000


Por los fundamentos expuestos en la Per Curiam que antecede, resolvemos que el Lcdo. Juan Rosa Marcano infringió el Art. 15 de la Ley Núm. 99 de 27 de junio de 1956. No obstante, tomando en consideración el hecho de que la actuación del querellado no perjudicó a persona alguna, ya que la comparecencia engañosa de los otorgantes fue la que provocó la nulidad de la escritura; y que su récord profesional como notario refleja dos apercibimientos por este Tribunal de cumplir estrictamente con la Ley Notarial de 1987 por el querellado haber dejado al descubierto su fianza notarial, estimamos prudente, limitar la sanción a una amonestación. Le apercibimos que en el futuro deberá ceñirse estrictamente a las disposiciones de la Ley Notarial que estuviese vigente al momento de otorgar una escritura.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López disiente por entender que resulta procedente decretar la suspensión del querellado, del ejercicio del notariado, por un término de tres (3) meses. El Juez Asociado señor Negrón García se une a las expresiones del Juez Asociado señor Rebollo López.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo