ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| GIERBOLINI SERVICES, LLC.<br><br>Parte Apelada<br><br>v.<br><br><br>JACOB ELI GOODSON<br><br>Parte Apelante | KLAN202401079 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Comerío<br><br>Caso Núm.: CR2024CV00153<br><br><br>Sobre: Cobro de Dinero (ordinario) |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de febrero de 2025.

Compareció por derecho propio el Sr. Jacob Eli Goodson (en adelante, "Apelante" o "señor Goodson"), mediante recurso de *Apelación* en el que nos solicitó que revoquemos la *Sentencia* que emitió y notificó el Tribunal de Primera Instancia, Sala Superior de Comerío, el 30 de octubre de 2024. Mediante el referido dictamen, el foro primario declaró "Con Lugar" la "**Demanda**" que presentó la empresa Gierbolini Services LLC (en adelante, "Apelado" o "Gierbolini") y ordenó al Apelante el pago de la suma principal de $5,186.50, más los intereses acumulados, hasta su total y completo saldo, además de la cantidad de $2,500.00, por concepto de honorarios de abogados, costas y gastos a favor del Apelado.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen apelado.

**I.**

En mayo de 2024, Giberbolini presentó una "**Demanda sobre Cobro de Dinero**", al amparo de la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V, R. 60, contra el señor Goodson.[1] Surge del expediente de autos, que ambas

---

[1] *Véase,* Apéndice del recurso de apelación, págs. 1-4.

Número Identificador:
SEN2025_____

partes suscribieron un contrato el 6 de septiembre de 2023, en el que se pactó que Gierbolini llevaría a cabo unas mejoras y reparaciones en cierta propiedad perteneciente al señor Goodson, situada en el Municipio de Comerío.

Según pactado, al comienzo de la obra el señor Goodson le entregó al Apelado un cheque por la suma de $5,186.50, equivalente a la mitad del costo total de la obra.[2] La otra parte sería entregada al finalizar el proyecto. Como parte del acuerdo, los trabajos de mejoras debían culminar en un periodo de noventa (90) días, contados a partir del recibo del primer pago. Esto sería el 20 de diciembre de 2023.[3]

El 13 de diciembre de 2023, Gierbolini le envió al Apelante la Certificación Eléctrica.[4] También, le preguntó si ya tenía electricidad.[5] Ante la falta de respuesta, el 22 de diciembre de 2023, le advirtió que, si ya tenía electricidad, daba por culminado el proyecto.[6] A su vez, le informó que enviaría la última factura. Ese mismo día, el Apelante confirmó que tenía electricidad en la propiedad.[7]

Mediante mensaje de texto, el 26 de diciembre de 2023, Gierbolini le preguntó al Apelante cuándo podía pasar a recoger el restante del dinero acordado.[8] Asimismo, le solicitó que le dejara saber si aún estaba interesado en hacer el trabajo de las ventanas, según cotizado. El Apelante le respondió que sí, pero que tenía que esperar a que el banco hipotecario se comunicara con él.[9] Gierbolini le respondió que no había problema y que entonces trabajaría en las cotizaciones.[10]

El 28 de diciembre de 2023, el señor Goodson le informó a Gierbolini que no era necesario que trabajara en las cotizaciones, ya que su empresa no cumplió con los requisitos para emitir el segundo pago.[11] Le indicó que se

---

[2] Íd., págs. 1-4, 7.
[3] Íd., págs. 1-4, 51-66.
[4] Íd., pág. 77.
[5] Íd., pág. 78.
[6] Íd.
[7] Íd.
[8] Íd., pág. 79.
[9] Íd.
[10] Íd., pág. 80.
[11] Íd.

excedió del término de noventa (90) días que se pactó para culminar el trabajo. En respuesta, el Apelado le cuestionó su decisión, no obstante, sostuvo que la obra se completó antes de la fecha acordada.[12] Inmediatamente, el señor Goodson le informó que ya no necesitaba de sus servicios.[13] Ante el alegado incumplimiento del Apelante con el 50% del pago acordado, Gierbolini decidió presentar la "**Demanda sobre Cobro de Dinero**", en la que reclamó el cobro $5,186.50 restantes, por los servicios que prestó, más $1,500.00, por concepto de costas, gastos, intereses y honorarios de abogados.[14]

Oportunamente, el Apelante presentó, por derecho propio, su contestación a la demanda y negó las alegaciones de Gierbolini.[15] Expuso que conversó, en varias ocasiones, con el Apelado sobre las reparaciones que estaban pendientes y que éste se comprometió a completar los arreglos antes de que culminara el plazo de noventa (90) días, pero no lo hizo. Afirmó que el envío del Certificado Eléctrico no incluyó ningún mensaje sobre la terminación del proyecto y que el único aviso que recibió fue la factura que entregó Gierbolini dos (2) días después de haber transcurrido el término pactado.[16] Por ello, reiteró que el Apelado no completó la obra acordada y solicitó la compensación de $1,500.00 por la pérdida de ingresos, reparaciones de emergencias, costas y honorarios de abogado.[17]

Mediante *Resolución y Orden*, el TPI convirtió el procedimiento sumario en uno ordinario por exceder la cuantía reclamada de $5,000.00.[18] Cabe señalar también que, durante los procedimientos, el TPI emitió varias resoluciones y órdenes en la que autorizó los servicios de un intérprete, según fue solicitado por el Apelante.[19]

Tras varios trámites procesales y luego de celebrar el juicio en su fondo, el 30 de octubre de 2024, el TPI notificó una *Sentencia* que declaró

---

[12] Íd., pág. 81.
[13] Íd.
[14] Íd., pág. 1.
[15] Íd., págs. 53-59.
[16] Íd.
[17] Íd.
[18] Íd., págs. 91-93.
[19] Íd., págs. 45-47, 97-99, 109-115.

"Con Lugar" la *Demanda* que presentó Gierbolini.[20] A su vez, ordenó el pago por la cantidad de $5,186.50 de principal, más los intereses acumulados desde la fecha en que se emitió la *Sentencia* hasta su total y completo saldo y una cantidad ascendente a $2,500.00, por concepto de honorarios de abogados, costas y gastos.

En desacuerdo con lo resuelto, el Apelante sometió, por derecho propio, una solicitud de reconsideración en la que reiteró sus planteamientos y defensas.[21] El foro de instancia denegó la petición.[22] Aun inconforme con lo resuelto, el Apelante acudió ante este Tribunal intermedio mediante el recurso de epígrafe, en el que señaló los siguientes errores:

> El juez fue perjudicial para una persona que no es puertorriqueña y no habla español.

> No se prestó la debida atención a las pruebas.

> Las Pruebas [de los] Apelantes Presentadas ante el Tribunal no fueron ingresadas al expediente.

> Las pruebas fueron ingresadas fuera de los límites de las Reglas de Evidencia de Puerto Rico.

El 14 de febrero de 2025, el Apelado presentó "**Moción de Desestimación de Recurso de Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A.

La Regla 60 de Procedimiento Civil regula el procedimiento sumario de la acción de cobro de dinero para cantidades que no excedan los quince mil dólares ($15,000.00), excluyendo intereses. 32 LPRA Ap. V, R. 60. Su propósito es "agilizar y simplificar los procedimientos en acciones de reclamaciones de cuantías pequeñas, para así lograr la facilitación del acceso a los tribunales y una justicia más rápida, justa y económica en este tipo de

---

[20] Íd., págs. 171-177.
[21] Íd., págs. 111-192.
[22] Íd., pág. 193.

reclamación". Asoc. Res. Colinas Metro. v. S.L.G., 156 DPR 88, 97 (2002) (énfasis omitido).

Recientemente, el Tribunal Supremo reiteró que debido al carácter sumario del procedimiento establecido por la Regla 60, *supra*, "el emplazamiento por edicto, la contestación a la demanda, el descubrimiento de prueba, *las reconvenciones*, la demanda contra terceros, entre otros, son preceptos incompatibles con esta herramienta sumaria". (Énfasis en el original). RMCA v. Mayol Bianchi, 208 DPR 100, 108 (2021). De ahí que el máximo foro resolviera que procede la conversión del pleito al trámite ordinario cuando: (1) la parte demandada demuestra poseer una reclamación sustancial, (2) en el interés de la justicia, las partes solicitan que el pleito se ventile ordinariamente y (3) el tribunal de instancia, dentro de sus facultades discrecionales, entiende que procede la conversión. Cooperativa v. Hernández Hernández, 205 DPR 624, 637-638 (2020).

No obstante, si el demandado plantea una reclamación sustancial porque el derecho al cobro incoado por el demandante no surge claro y posee una reconvención compulsoria o necesita acumular a un tercero demandado al pleito, entre otras cosas, procederá la conversión del procedimiento a uno ordinario. RMCA v. Mayol Bianchi, *supra,* pág. 109, citando a R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2404, pág. 629.

Para que proceda una reclamación en cobro de dinero, la parte demandante debe demostrar que la deuda está vencida, es líquida y exigible. RMCA v. Mayol Bianchi, *supra*, pág. 108. Una deuda es líquida por ser cierta y determinada. Íd. Es exigible "porque puede demandarse su cumplimiento. (Cita omitida). Así que, 'al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha *sido aceptado como correcto por el deudor y que está vencido*'". Íd., págs. 108-109 (énfasis en el original).

**B.**

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Arthur Young & Co. v. Vega III, 136 DPR 157, 169 (1994). A base de éste, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Art. 1232 del Código Civil, 31 LPRA sec. 9753. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. Art. 1230 del Código Civil, 31 LPRA sec. 9751. En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Art. 1237 del Código Civil, 31 LPRA sec. 9771; Díaz Ayala et al. v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, los contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez. Art. 277 del Código Civil, 31 LPRA sec. 6161.

Ahora bien, cuando el contrato es válido, pero uno de los contratantes que se obligó recíprocamente incumple con su parte del pacto, el perjudicado podrá reclamar el cumplimiento del contrato o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Art. 1255 del Código Civil, 31 LPRA sec. 9823. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995).

> La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e

impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, (Ahora Art. 1255 del Código Civil de 2020, supra) dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. Íd., págs. 875-876 (cita omitida).

En lo que aquí nos concierne, el contrato de arrendamiento de obra se concretiza cuando el contratista se obliga a realizar una obra material por el pago de un precio. 31 LPRA sec. 10251. Conforme ha sido definido por el Tribunal Supremo, este tipo de acuerdo es "esencialmente uno de trabajo, mediante el cual una de las partes se encarga de hacer una cosa para la otra, mediante un precio convenido entre ellos. Ahora bien, no hay duda ante que el contrato de obra es uno de carácter consensual, bilateral y oneroso, cuyos elementos característicos son la obra a realizarse y el precio. González Bauzá v. García López, 129 DPR 579, 592 (1991).

Así pues, "el contratista elige libremente los medios y puede valerse, bajo su dirección y responsabilidad, de auxiliares para la ejecución de la obra". 31 LPRA sec. 10252. Por su parte, el comitente está compelido a "(a) pagar el precio de la obra; (b) proporcionar la colaboración necesaria para que la obra pueda realizarse; y (c) recibir la obra, cuando esta ha sido ejecutada conforme a lo convenido". 31 LPRA sec. 10271. Como en todo contrato, una vez queda perfeccionado un contrato de obra, las partes quedan obligadas al cumplimiento de lo pactado y si se incurriese en dolo, negligencia o morosidad responderán por los daños y perjuicios resultantes.

También conocido como "arrendamiento de industria", contrato de empresa", "contrato de obra" y "contrato de ejecución de obras", este tipo de pacto establece como obligación fundamental del dueño de la obra tener que pagar el precio de ésta en la forma, cuantía y en el tiempo convenido. Master Concrete Corp. v. Fraya, S.E., 151 DPR 616, 624 (2000). "Ante el incumplimiento de la otra parte, el perjudicado puede exigir el cumplimiento de la obligación en la forma específicamente debida o la resolución del mismo; solicitar el cumplimiento mediante la obtención del equivalente económico de la prestación debida y, a la vez, pedir la indemnización de

daños y perjuicios resultantes de la repercusión del incumplimiento en su patrimonio." Íd., pág. 625. Es menester destacar que el cumplimiento defectuoso por parte del contratista, a pesar de que la obra sea útil, permite que el dueño pueda invocar *exceptio non rite adimpleti contractus* y pedir una reducción del precio proporcional a los vicios. Íd.

**D.**

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". Gómez Márquez *et al.* v. El Oriental, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. Íd.

**III.**

Para el señor Goodson, el tribunal apelado incidió al no considerar la prueba que sometió durante el pleito de cobro de dinero en su contra que, según expuso, demuestra que Gierbolini incumplió con el contrato que

suscribió para que llevara a cabo unas reparaciones en su propiedad. Asegura que la evidencia sometida revela que el Apelado no completó el trabajo para el cual fue contratado dentro del término de noventa (90) días, y que de ninguna manera acordó verbalmente variar los términos y condiciones del acuerdo, como señaló la parte apelada.

Después de revisar detenidamente la totalidad del expediente en autos y la transcripción de la prueba oral sometida (TPO), somos del criterio que al Apelante no le asiste la razón. Veamos.

De entrada, debemos establecer que la prueba presentada ante el foro de instancia demostró que entre las partes existió un contrato válido para unos trabajos de reparación en la propiedad perteneciente al señor Goodson. Es decir, no existe controversia alguna sobre la validez del acuerdo habido entre las partes. Tal y como lo expresó el TPI, se desprende del mismo que las partes acordaron lo siguiente: (1) restauración y nivelación de losa de hormigón y sus respectivos materiales; (2) pintura de áreas acordadas en el interior y exterior de la propiedad y sus respectivos materiales; (3) reparaciones en concreto alrededor de la casa y sus respectivos materiales; (4) instalación y reparación de tres receptáculos de bombillas; (5) instalación de dos calentadores de agua; (6) lavado a presión del techo y aplicación de dos capas de sellador de techo y sus respectivos materiales; (7) certificado eléctrico; y (8) certificado de plomería.

Igualmente, surge de la TPO que las partes acordaron asuntos adicionales verbalmente a aquéllos descritos en el contrato escrito. La evidencia presentada demuestra que los trabajos que el Apelante alega que Gierbolini dejó de efectuar no fueron parte de lo pactado por las partes. Igualmente, la evidencia demostró que los desperfectos identificados por el señor Goodson en el techo no era posible arreglarlos por medio de sellado con concreto, pues se estableció que los agujeros del techo eran realmente drenajes que no podían sellarse permanentemente. De igual manera, la prueba testifical estableció que una abertura en una de las paredes que correspondía a un aire acondicionado no fue parte de los términos y

condiciones pactadas. En cuanto a las alegaciones del Apelante en cuanto a que Gierbolini no restauró ni niveló correctamente la losa de hormigón de la parte de afuera del inmueble, observamos que la evidencia estableció que el acuerdo entre las partes era tapar las grietas del suelo, pues esa área sería demolida posteriormente.

Debemos destacar que de la prueba se desprendió que el señor Goodson siempre estuvo presente en la propiedad cuando se efectuaron las mejoras contratadas y que, según fuera requerido por este último, las mismas eran enmendadas para ajustarlas a las expectativas del Apelante. De hecho, también debemos destacar que, conforme expresado por el foro apelado, la evidencia demostró que el señor Goodson no tuvo queja alguna sobre la restauración y nivelación del concreto mientras se hicieron las mejoras en la propiedad. Sin embargo, a pesar de haber estado presente en todo momento, no fue sino luego de que se le entregara la factura final que el Apelante alegó que los arreglos no cumplieron con los estándares y que tampoco fueron entregados dentro del plazo acordado. Sobre esto último, hacemos hincapié en que Gierbolini ofreció corregir las reparaciones que no se ajustaron a los estándares del Apelante, más sin embargo, éste se negó a pesar de que las mismas se ofrecerían libre de costo.

Un análisis desapasionado y mesurado de la TPO no establece que haya mediado prejuicio, parcialidad, error manifiesto o pasión por parte del foro primario en la apreciación de la prueba. Todo lo contrario, entendemos que las conclusiones a las que arribó el TPI en la *Sentencia* apelada se ajustaron específicamente a la evidencia que tuvo ante sí dicho foro. De hecho, no creemos que el juzgador de los hechos hubiera actuado movido por inclinaciones personales de tal intensidad que adoptó posiciones, preferencias o rechazos con respecto a las partes o sus causas.

Ahora bien, el señor Goodson afirma que fue discriminado durante el proceso judicial por no hablar el idioma español. Asegura que el traductor asignado a su caso no cumplió con su función de traducir las expresiones del

Juez, así como sus declaraciones. Sostiene que este trámite accidentado le violó su derecho a un debido proceso de ley.

Al examinar la prueba presentada, resolvemos que el TPI cumplió con el trámite establecido para estos casos. Según surge del expediente, durante todo el proceso judicial el señor Goodson estuvo asistido por un intérprete que le tradujo el juicio en su contra a su lengua natal. Por consiguiente, el error señalado no se cometió.

En suma, un análisis de la totalidad de la evidencia, revela que no cometió un error en derecho, toda vez que las conclusiones no están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la prueba recibida. En otras palabras, la apreciación de la evidencia efectuada por el TPI no se distanció de la realidad fáctica ni fue inherentemente imposible o increíble. Por lo tanto, no tenemos elementos suficientes para para sustituir el criterio del foro de instancia por el nuestro.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *confirmamos* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones